UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:24-CV-00012-GNS

PERRY LEE GRAVES                                                                                          PLAINTIFF

v.

JOHNNY TEAGUE                                                                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 32). The motion is ripe for adjudication.

**I.     STATEMENT OF FACTS AND CLAIMS**

Plaintiff Perry Lee Graves ("Graves") filed this *pro se* 42 U.S.C. § 1983 civil-rights lawsuit against Defendant Jonny Tegue[1] ("Teague") in both his official and individual capacities. (Compl., DN 1; Am. Compl. 2, DN 8).  Teague is a police officer employed by the Bowling Green Police Department ("BGPD"). (Am. Compl. 2). On November 27, 2023, Teague arrested Graves after he refused to leave a local hospital. (Am. Compl. 3). During the arrest, Graves alleges that Teague used excessive force. (Am. Compl. 3).

Following the Court's screening review of the Amended Complaint (DN 8) pursuant to 28 U.S.C. § 1915(e)(2), Graves' claim for excessive force was only permitted to proceed against Teague in his individual capacity. (Initial Review & Service & Referral Order 2, DN 9). The deadline for all pretrial fact discovery was December 20, 2024, and Graves has now moved for summary judgment. (Scheduling Order 2, DN 28; Def.'s Mot. Summ. J., DN 32).

---

[1] As noted in the summary judgment motion, Defendant's last name is spelled "Teague," and the Court will use the correct spelling.

1

## II.     JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented. *See* 28 U.S.C. § 1331.

## III.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be

evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

In ruling on the summary judgment motion, bodycam footage from BGPD officers is material to the Court's review. If the video shows facts so clearly that a reasonable jury would be able to view these facts in only one way, the Court should view the facts in the light depicted by the video. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). When the facts shown in the bodycam footage can be interpreted in multiple ways or if the footage does not reveal the salient facts, the facts must be viewed in the light most favorable to the nonmoving party. *See Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015). Where the video footage has "gaps or uncertainties," factual uncertainties and any reasonable inferences must be viewed in the light most favorable to the nonmoving party. *See LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022).

## IV.   DISCUSSION

### A.   Requests for Admission

Teague contends that he is entitled to summary judgment due to Graves' failure to respond to the requests for admission ("RFAs") propounded pursuant to Fed. R. Civ. P. 36. (Def.'s Mot. Summ. J. 6-8). Under Fed. R. Civ. P. 36, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). This rule serves two vital purposes: to narrow the list of contested issues prior to trial (and thereby avoid wasting resources); and to elicit proof on the remaining issues. *See* Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment; *O'Neill v. Medad*, 166 F.R.D. 19, 21 (E.D. Mich. 1996). "It appears well settled that a failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are

3

dispositive." *Padgett v. Big Sandy Reg'l Det. Ctr.*, 424 F. Supp. 3d 506, 510 (E.D. Ky. 2019) (citation omitted). "Rule 36 is no 'paper tiger,' and admissions that 'constitute matters which are dispositive of [the] case' provide a basis for granting summary judgment." *Id.* (alteration in original) (quoting *Equal Emp. Opportunity Comm'n v. Baby Prods. Co.*, 89 F.R.D. 129, 132 (E.D. Mich. 1981).

Teague's discovery requests—including the RFAs—were served by mail on August 26, 2024. (Def.'s Mot. Summ. J. Ex. B, at 11). Those discovery requests included the following RFAs:

> REQUEST NO. 1: Admit that, on November 27, 2023, you refused to leave Greenview Regional Hospital after medical professionals and/or hospital staff discharged you from the hospital's care.
> REQUEST NO. 2: Admit that, on November 27, 2023, you refused to leave Greenview Regional Hospital after medical professionals and/or hospital staff repeatedly directed you to do so.
> REQUEST NO. 3: Admit that, on November 27, 2023, you had no lawful basis to remain at Greenview Regional Hospital after medical professionals and/or hospital staff discharged you.
> REQUEST NO. 4: Admit that, on November 27, 2023, police officers repeatedly directed you to leave Greenview Regional Hospital.
> REQUEST NO. 5: Admit that, on November 27, 2023, you ignored and/or failed to comply with the officers' directives, and you refused to leave Greenview Regional Hospital even though you had no lawful basis to remain there.
> REQUEST NO. 6: Admit that, on November 27, 2023, Officer Johnny Teague gave you multiple opportunities to voluntarily leave Greenview Regional Hospital.
> REQUEST NO. 7: Admit that, on November 27, 2023, Officer Johnny Teague explained to you, in clear terms, that if you didn't voluntarily leave Greenview Regional Hospital, officers would take you to jail.
> REQUEST NO. 8: Admit that police officers arrested you on November 27, 2023, because you refused to comply with their directives and because you refused to voluntarily leave Greenview Regional Hospital.
> REQUEST NO. 9: Admit that, on November 27, 2023, you resisted when police officers, including Officer Johnny Teague, attempted to arrest you.
> REQUEST NO. 10: Admit that Officer Johnny Teague never punched, kicked, choked, or otherwise struck you when you were arrested on November 27, 2023.

4

> REQUEST NO. 11:  Admit that no police officer punched, kicked, choked, or otherwise struck you when you were arrested on November 27, 2023.
>
> REQUEST NO. 12:  Admit that when you were arrested on November 27, 2023, Officer Johnny Teague did not allow your private parts to be exposed to any person at The Medical Center.
>
> REQUEST NO. 13:  Admit that when you were arrested on November 27, 2023, no police officer allowed your private parts to be exposed to any person at The Medical Center at Bowling Green.
>
> REQUEST NO. 14:  Admit that when you were arrested on November 27, 2023, the arresting officers made a reasonable effort to ensure you were clothed throughout the entire arrest process.
>
> REQUEST NO. 15:  Admit that you suffered no broken bones when you were arrested on November 27, 2023.
>
> REQUEST NO. 16:  Admit that you suffered no lacerations, bruising, or other physical injury(ies) when you were arrested on November 27, 2023.
>
> REQUEST NO. 17:  Admit that you incurred no medical expenses due to your arrest on November 27, 2023.
>
> REQUEST NO. 18:  Admit that Officer Johnny Teague had probable cause to arrest you on November 27, 2023.

(Def.'s Mot. Summ. J. Ex. B, at 9-11, DN 34-1).  Graves never responded to the discovery requests, and as a result, the RFAs are deemed admitted pursuant to Fed. R. Civ. P. 36.

### B.  Section 1983 - Excessive Force Claim

Relying on the RFAs and the bodycam video of the BGPD officers, Teague contends that he is entitled to summary judgment. (Def.'s Mot. Summ. J. 6-9).  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The Fourth Amendment applies to a claim that a police officer "used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Id.* at 388.  As the Sixth Circuit has explained:

> Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene.  An officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it."  "The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable."

*Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (internal citations omitted) (quoting *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of '"the nature and quality of the intrusion on the individual's Fourth Amendment interests"' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "In order to comply with the Fourth Amendment, an officer's use of force must be objectively reasonable under the totality of the circumstances." *Smith v. City of Troy*, 874 F.3d 938, 943 (6th Cir. 2017) (citing *Kent v. Oakland Cnty.*, 810 F.3d 384, 890 (6th Cir. 2016)).

Viewing the evidence in the light most favorable to Graves, the record reveals a lack of evidence to support any allegation that Teague used excessive force in violation of Graves' Fourth Amendment rights. By failing to respond to the RFAs, Graves has admitted Teague did not punch, kick, choke, or otherwise strike Graves during the arrest. (Def.'s Mot. Summ. J. Ex. B, at 10). Similarly, a review of the bodycam video reflects that no reasonable juror could conclude that Teague used excessive force relating to Graves' arrest. (Def.'s Notice Filing, DN 35). While Graves claims that Teague injured him in transporting Graves to the Warren County Regional Jail, Graves has admitted that he suffered no broken bones, lacerations, bruises, or other physical injury when he was arrested. Therefore, Graves has not shown that Teague used an unreasonable amount of force to support the Section 1983.

In addition, the uncontroverted record reflects that Graves was actively resisting arrest and that Teague had probable cause to make the arrest. He conceded as much by failing to respond to the RFAs, and Graves has not identified any evidence to the contrary. (Def.'s Mot. Summ. J. Ex. B, at 10-11). The bodycam video of the BGPD officers also supports the finding

6

that Graves refused to leave the hospital after being asked to leave and actively resisted Teague's efforts to place him in handcuffs. (Def.'s Notice Filing, DN 35).

Finally, as the non-moving party, Graves has failed to present specific facts to show that there is a genuine issue of fact for trial. "To determine whether a genuine dispute of material fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record." *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). As reflected by the record, Teague attempted to engage in discovery but Graves failed to respond. Graves also failed to respond to Teague's summary judgment motion or otherwise put evidence in the record to defeat the motion.

At the summary judgment stage, Graves' naked allegations in the pleadings are insufficient to defeat summary judgment on his Section 1983 claim. Overall, the evidentiary record does not show that Teague's use of force was objectively unreasonably to support an excessive force claim, and Teague is entitled to summary judgment as a matter of law.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 32) is **GRANTED**, and the Amended Complaint (DN 8) is **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

April 4, 2025

cc:     counsel of record
        Plaintiff, *pro se*

7